## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL ANTHONY MARCAVAGE,** | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **CIVIL ACTION** |
| **v.** | **:** | |
| | **:** | **NO. 04-4741** |
| **CITY OF PHILADELPHIA, et al.,** | **:** | |
| **Defendants.** | **:** | |

### MEMORANDUM AND ORDER

Presently before this Court are Plaintiff's Amended Motion for Partial Summary Judgment (Docs. 59 & 60), Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion (Docs. 64 & 65), and Plaintiff's Response in Opposition to Defendants' Cross-Motion (Doc. 67). For the reasons set forth below, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment in part.

### I. FACTUAL BACKGROUND

From the evidence of record, the pertinent facts are as follows. Plaintiff, Michael Anthony Marcavage ("Marcavage"), a devout Christian, believes that it is his "Biblical mandate" to educate people about "the sinful nature of our country." Such sins, he believes, include sexually oriented businesses, homosexuality and abortion. Marcavage regularly engages in activities such as open-air preaching, distributing of Gospel literature, sidewalk ministering, and the displaying of signs as part of his evangelical ministry. Marcavage's religious activity has led to a series of encounters with certain City of Philadelphia police officers; the encounters included two arrests. Defendants, Warren Edwards, William Fisher, James Tiano, and Daniel Kelly (the "Individual Defendants"), are four of the City of Philadelphia police officers that have confronted Marcavage at various times during his evangelical activity. It is those confrontations that have given rise to this action.

The first encounter took place on Halloween Night, October 31, 2002, at approximately 11:30 p.m., when Marcavage was on the corner of Fourth and South Streets in Philadelphia engaging in "open-air preaching" with a megaphone. At that time, a police officer approached Marcavage about his activity, and Marcavage then moved to the corner of Fifth and South Streets. Shortly thereafter, Marcavage was approached by two other officers, who instructed him that his use of sound amplification equipment was not permitted. Marcavage moved back to Fourth Street, where he resumed using the megaphone. After a warning, one of the officers on the scene arrested Marcavage. Marcavage also claims that the arresting officers slammed him against a window during the arrest. When the case went to trial, Marcavage was found guilty in Municipal Court of disorderly conduct, but the charges were dismissed on appeal to the Philadelphia Court of Common Pleas.

On March 21, 2003, Marcavage returned to South Street to preach but left, fearing arrest, after a confrontation with two police officers who accused him of disobeying a noise ordinance and obstructing a highway. On May 29, 2003, Marcavage returned to preach in front of a "sexually-oriented business" named "Condom Kingdom." Shortly after Marcavage's arrival, Defendant Edwards approached him and told him that he would have to stop using the megaphone, or he would be arrested. Edwards also told Marcavage that he could continue preaching, but not while standing in one place. Marcavage refused to move along, so Sergeant Edwards arrested him for obstruction of a highway. The charges against Marcavage were dismissed when Sergeant Edwards did not appear at trial. The fourth incident occurred in front of Woody's Bar on August 15, 2003. According to Marcavage, Defendant Kelly told him to leave. Marcavage did not leave the scene, was not arrested and was able to continue his open-air preaching.

Marcavage's activity was not limited to Philadelphia's South Street. On May 1, 2004 he began preaching outside of a Planned Parenthood clinic on Locust Street, also in Philadelphia. Marcavage was using a megaphone this time as well. Marcavage claims that he was approached by an unidentified Philadelphia police officer, who told him that the use of the megaphone was against the law. Despite the confrontation with the police, Marcavage was able to continue his preaching under "the threat of a possible citation."

The very next day, Marcavage and some of his associates attended "Sunday Out," a block-party that took place on Twelfth and Locust Streets. Sunday Out, sponsored by an organization called the Equality Forum, is one of several events in a week-long program celebrating the equality and civil rights of gay, lesbian, bisexual and transgendered persons. The events were undertaken pursuant to a permit issued by the City of Philadelphia, and were open to the public. The police felt that Marcavage's message (which they claim was anti-homosexual) threatened to disrupt the event. The officers also feared for Marcavage's personal safety, indicating that people attending the event might attack him because of his message. The police, citing these safety concerns, forced Marcavage to the outside parameters of Sunday Out and restricted his movement to certain parts of the block party. Specifically, Defendant Tiano asked Marcavage to move from Locust Street to Spruce Street, one block away from the event. The police also used bicycle-patrol officers to separate Marcavage and the Sunday Out attendees. When Marcavage requested that he and his associates be allowed back into the event, Tiano refused because he could not assure their safety. Marcavage continued his preaching on the corner of Thirteenth and Locust.

The last police encounter took place, on June 13, 2004, Marcavage and his associates attended another gay pride event called the Philly Pride Parade. The day's events included a parade,

which ended at the intersection of Broad Street and Washington Avenue, and a block party, held in a gated lot on the northeast corner of that same intersection. Both events were undertaken pursuant to permits issued by the City of Philadelphia. Defendants Tiano and Fisher were in attendance. Fisher (having the same safety concerns as before) informed Marcavage that he would have to engage in his open-air preaching on the northwest corner of the intersection. Marcavage insisted that Fisher allow him to cross the street, but Fisher refused, indicating that Marcavage would be arrested if he left the northwest corner. Marcavage did not cross the street and was not placed under arrest. Soon after this last encounter, Marcavage filed the present action.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under the governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this

rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts must await trial. *Id.*

### III. DISCUSSION

Marcavage brings this action against the Individual Defendants and the City of Philadelphia, pursuant to § 1983 of the Civil Rights Act of 1871, which provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). Marcavage claims that the Defendants violated his rights to free speech and free exercise of religion by preventing him from expressing his religious viewpoints in public without fear of arrest or harassment. Similarly, Marcavage contends that the Defendants' actions regarding his religious expression give rise to an equal protection violation. Plaintiff also claims that the two arrests violated his rights against protection from unreasonable seizure under the Fourth Amendment. Marcavage also brings supplemental state law claims alleging malicious prosecution and false imprisonment.

Marcavage moved for summary judgment on the first amendment claims and the malicious prosecution claims. Defendants opposed Plaintiff's Motion, and moved for summary judgment on all claims.

## A. Plaintiff's First Amendment Claims (Claims I-II)

In his Amended Complaint, Marcavage alleges that the Defendants' activity on the dates in question denied him his right to freedom of speech and free exercise of religion, as guaranteed by the First Amendment. (Am. Compl. ¶¶ 202-13; Pl.'s Summ. J. Mem. at 2-7.) The parties filed cross-motions for summary judgment on the free speech claim, which the Court considers below.

The Supreme Court has outlined a three-step analysis for alleged violations of the First Amendment. This Court must first decide whether the speech at issue (here engaging in open-air preaching) is protected by the First Amendment. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). Assuming that open-air preaching is protected speech, the Court must next identify the nature of the forum, "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* Finally, the Court must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard. *Id.* The dissemination of ones religious views is unquestionably protected under the First Amendment. *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Furthermore, the parties agree that the areas in question are public fora. (*See* Pl.'s Summ. J. Mem. at 4-5; Defs.' Summ. J. Mem. at 4-5.) Therefore, in order to determine the appropriateness of summary judgment, this Court must decide whether the police's restriction of Marcavage's speech during the incidents in question was reasonable, under the applicable First Amendment standard.

6

The extent to which the Government may limit speech depends on whether the forum is public or nonpublic. *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1255 (3d Cir. 1992). As a general rule, the government may limit speech that takes place on its own property without much First Amendment restriction. *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Where the area in question is a traditional public forum though, the government's ability to limit speech is "impinged upon by the First Amendment." *Christ's Bride Ministries v. SEPTA*, 148 F.3d 242, 247 (3d Cir. 1998) (citing *Perry*, 460 U.S. at 45-46). Content-based restrictions on private speech in public fora must survive strict scrutiny in order to pass constitutional muster. *Id*. (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992)). If, however, the restriction in question is "viewpoint neutral," a government's burden is not as high. *Christ's Bride Ministries*, 148 F.3d at 247. Viewpoint neutral restrictions need only be "reasonable in light of the purpose served by the forum." *Id.* (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995). Regarding public fora, governments may impose time, place and manner restrictions on speech, so long as those restrictions are reasonable, and are necessary to achieve a significant governmental interest. *Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972).

Marcavage contends that the Defendants' action amounted to a content based restriction on his speech. (Pl.'s Summ. J. Mem. at 5-6.) He reasons that he is entitled to summary judgment because his speech was improperly censored on the basis of his viewpoint, and that such restrictions are presumptively unconstitutional. *Id.* However, this Court disagrees, as there are several issues of material fact regarding the reasons the police did not allow Marcavage to continue his open-air preaching in the manner that he wished. On May 29, 2003, Defendant Edwards arrested Marcavage

for alleged obstruction of a highway.[1]   The fact Edwards believed he had probable cause to arrest Marcavage (and the fact that probable cause may indeed exist), creates an issue of fact as to Edwards's motives for stopping Marcavage's activity.   Similarly, Defendant Kelly's interaction with Marcavage on August 15 of that same year cannot support summary judgment for the Plaintiff in this case because there is not enough evidence regarding that confrontation that would allow the Court to determine that Kelly's motivation was anything other than concern for public safety.   The other confrontations are equally inconclusive.   During the May 2, 2004 "Sunday Out" event, as well as the June 13, 2004 Philly Pride Event, the Defendants claim that their reaction to Marcavage's activity was based on concern for public safety.   While the Court is not making a determination as to the credibility of this position, there is enough evidence in the record regarding the potential for a disturbance at both of these events to create an issue of fact for a jury.   Because there exists a material dispute as to whether the Defendants interfered with Plaintiff's open-air preaching because of the content of his message, Plaintiff's motion for summary judgment on his First Amendment claims is denied.

The Court will deny Defendants' summary judgment motion for a similar reason.   Defendants submit that Marcavage's First Amendment claims should fail because each instance outlined in the Amended Complaint represented a reasonable time, place and manner restriction of the Plaintiff's activity.   (*See* Defs.' Summ. J. Mem. at 12-13, 15-16, 20.)   Essentially, Defendants argue that their belief in the propriety of the arrests, and their concern for public safety entities them to summary

---

[1] In Pennsylvania "[a] person, who, having no legal privilege to do so, intentionally or recklessly obstructs any highway . . . or public utility right-of-way, sidewalk . . . [or] other public passage, whether alone or with others, commits a summary offense, or, in case he persists after warning by a law officer, a misdemeanor of the third degree."  18 PA. CONS. STAT. § 5507 (Lexis through the 2005 Legislative Session).

judgment.  While it is true that the City of Philadelphia may restrict the time place and manner of speech, the Defendants have not produced enough evidence to convince the Court that their actions were reasonable as a matter of law. As discussed at length below, there are a number of facts that may impact upon the question of whether the arrests were supported by probable cause.  *See infra* Part III., C.  If a jury were to find that the arrests lacked probable cause, they could find for Plaintiff Marcavage on the First Amendment claims.  Moreover, there are several facts that could influence the jury and result in a Plaintiff's verdict regarding the encounters where the Philadelphia Police did not arrest Marcavage.  A jury could find (as Plaintiff claims) that the Defendants' restrictions were content-based, due to Marcavage's message and the reaction to it.  However, a jury need not find that the restriction of Marcavage's speech during the non-arrest encounters was content-based for the Plaintiff to prevail because a reasonable jury could find that Defendants' actions did not constitute reasonable time, place and manner restrictions.  Accordingly, several issues remain for determination by a jury and Defendants' motion is denied as to the First Amendment claims.

**B. Plaintiff's Equal Protection Claim (Claim III)**

Plaintiff Marcavage's Equal Protection claim arises out of the events that took place at the May 2004 "Sunday Out" block-party.  (*See* Am. Compl. ¶¶ 215-19.)  In his Amended Complaint, Marcavage contends that even though his "communicative activities . . . did not materially differ from the . . . pro-homosexual activists at the Sunday Out event," he was denied the same opportunity to move freely through the event as the Sunday Out participants.  (Am. Compl. ¶ 215.)  Defendants claim that they are entitled to summary judgment on this claim because Marcavage cannot prove that the other attendees were disrupting the event.  (Defs.' Summ. J. Mem. at 17.)  Defendants further argue that Marcavage tendered no evidence that the alleged disparate treatment was designed to

discriminate against him because Chief Tiano was only concerned with maintaining public safety. *Id.* Unfortunately for Defendants, the equal protection case law does not entitle them to summary judgment on these facts.

The Fourteenth Amendment to the United States Constitution states that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Traditionally, equal protection claims are limited to actions that burden a fundamental constitutional right or target members of an identified suspect class. However, the Supreme Court has acknowledged that under certain circumstances a person may bring an equal protection claim based on a "class of one." *Olech*, 528 U.S. at 564-65.

A plaintiff who fails to allege membership of a suspect or otherwise protected class may nonetheless bring an equal protection claim if it can be shown that the defendants, acting under color of state law, intentionally treated plaintiffs differently from others similarly situated, and that there is no rational basis for the difference in treatment. *Highway Materials, Inc. v. Whitemarsh Twp.*, No. 02-cv-3212, 2004 U.S. Dist. LEXIS 19905, at * 65 (E.D. Pa. Oct. 4, 2004). Stated another way, to properly set forth an equal protection claim based upon purported selective treatment, a plaintiff must allege and demonstrate that (1) the plaintiff, compared with others similarly situated, was selectively treated and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of

10

constitutional rights, or by a malicious or bad faith intent to injure. *Homan v. City of Reading*, 15 F. Supp. 2d 696, 702 (E.D. Pa. 1998). A plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government has singled out plaintiff alone for different treatment. *See City of Cleburne v. Cleburne Living Ctr.*, U.S. 432, 439 (1985).

Viewing the facts in the light most favorable to Plaintiff Marcavage, the Court finds that a jury could find that an equal protection violation occurred at the Sunday Out event. Marcavage has produced evidence that he was selectively treated. The record shows that many of the Sunday Out participants were carrying signs and moving freely about the event, but Marcavage was not allowed the same access as those participants. Marcavage has also brought forth enough evidence regarding the police's motivation to discriminate. Similar to the First and Fourth Amendment claims, the Court concludes that there are still issues of material fact regarding the police's intent. It is not clear from the record whether the police actually treated Marcavage differently because of his preaching, or if it was reasonable for them to perceive his presence as a public safety threat. Consequently, the Defendants are not entitled to summary judgment on the equal protection claim and their motion is denied.

## C. Plaintiff's Fourth Amendment Claims (Claims IV-VII)

### 1. Excessive Force

Marcavage claims that the police used excessive force when they slammed him against a storefront window during the October 31, 2002 arrest. (Am. Compl. ¶¶ 49-50, 227.) To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d

11

Cir. 2004).  The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Therefore, if the use of force is objectively reasonable, both a police officer's good faith and any bad faith motivation are irrelevant. *Id.*  When considering the reasonableness of force, a district court may consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Kopec v. Tate*, 361 F.3d at 776-77.

The Court finds that there is sufficient evidence in the record to sustain a claim for excessive force.  Marcavage submitted affidavits from himself and one other witness that the police slammed him up against a storefront window on October 31, 2002.  (Pl.'s Statement Uncontested Facts ¶ 26 (citing Marcavage Aff. ¶ 41; Startzell Aff.).)  Furthermore, Marcavage indicates that he was cooperative while being taken into custody.  Viewing the facts in the light most favorable to the Plaintiff, the Court must deny Defendants' motion for summary judgment.

**2. Malicious Prosecution**

Both Plaintiff and Defendants move for summary judgment on Plaintiff's malicious prosecution claim, which he brings based on the October 31, 2002 and the May 29, 2003 incidents. (*See* Am. Compl. ¶¶ 20-61, 80-97; Pl.'s Summ. J. Mem. at 22.)  To prove § 1983 malicious prosecution, a plaintiff must show that (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in plaintiff's favor, (3) the defendants initiated the proceeding without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff

to justice, and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). A close review of the record reveals that neither party is entitled to summary judgment on this claim.

Marcavage argues that he is entitled to summary judgment because neither arrest was supported by probable cause. (Pl.'s Summ. J. Mem. at 21.) According to Marcavage, "he was arrested for merely engaging in constitutionally protected expressive activities" and therefore no probable cause existed to arrest him. *Id.* at 22. Furthermore, Marcavage reasons that the lack of probable cause allows the Court to infer malice. *Id.* at 21. However, the Court finds that Marcavage has not produced enough evidence to prevail on his motion for summary judgment. There are issues of fact surrounding whether probable cause existed in both cases. Probable cause for an arrest is based on the "totality of the circumstances" surrounding the alleged crime. *Illinois v. Gates*, 462 U.S. 213 (1983). Probable cause exists if it is reasonable for the arresting officer to believe that a crime is being committed. *Orsatti*, 71 F. 3d at 482. Given the different accounts of Plaintiff's actions, it is possible the Defendants' belief that a crime was being committed was reasonable. The fact that Plaintiff eventually prevailed in both criminal proceedings is not dispositive on the issue of probable cause. As a result, Marcavage is not entitled to summary judgment on his malicious prosecution claim.

While it is true that the facts of this case do not require a finding for Plaintiff, the record does not support judgment for the Defendants at this time either. It is just as possible that a jury could find that either (or both) of the arrests lacked probable cause. In a § 1983 action the issue of whether

13

there was probable cause to make an arrest is usually a question for the jury. *Sharrar v. Felsing*, 128

F.3d 810, 818 (3d Cir. 1997).  Defendants' summary judgment motion is denied as well.

**3. Unreasonable Seizure / False Arrest**

      Claims IV and VI are for unreasonable seizure and false arrest. (Am. Compl. ¶¶ 220-25, 231-

37.)  The Fourth Amendment offers protection from unreasonable searches and seizures by the

government.  U.S. CONST. amend. IV.  Because an arrest is a "seizure," for Fourth Amendment

purposes, a plaintiff may survive summary judgment on a § 1983 false arrest or unreasonable seizure

claim if that plaintiff can show that the arrest at issue lacked probable cause.  *See Johnson v.*

*Campbell*, 332 F. 3d 199, 211 (3d Cir. 2003).  As they did with the malicious prosecution claim,

Defendants argue that Marcavage's arrests were supported by probable cause.  (Def.'s Summ. J.

Mem. at 2, 10-12.)  The Court will deny this motion as well; material issues of fact remain as to the

existence of probable cause.

**D. Plaintiff's *Monell* Claims**

      Plaintiff Marcavage brings two types of *Monell* claims against the City of Philadelphia –( 1)

for inadequate training of its police officers and (2) for what Marcavage alleges is "the policy,

practice or custom of the City" to violate his constitutional rights.  (Am. Compl. ¶¶ 188-93.)  The

City of Philadelphia submits that it is entitled to summary judgment on the policy or custom claims

because Marcavage has not produced evidence of the policy, custom or practice that led to the

alleged violation of his constitutional rights, and even assuming there were such evidence,

Marcavage cannot prove that the policy caused him injury.  (Defs.' Summ. J. Mem. at 23-24.)  In

his Memorandum in Opposition, Plaintiff points to the seven incidents at issue in this case as

evidence of a policy, custom or practice.  (Pl.'s Opp. Mem. at 19.)

A municipality may be held vicariously liable for the unconstitutional actions of its agents when an agent's conduct was the result of a "municipal policy" or "well-established custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  A custom is a "persistent and widespread" practice of government action that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Id*. at 691. However, a municipality may not be held liable under § 1983 solely on the basis of the existence of an employee-employer relationship with a tortfeasor. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Municipalities can only be held liable if action pursuant to *an official municipal policy* caused a constitutional tort.  *Monell*, 436 U.S. at 691 (emphasis added).  Further, a municipality can only be liable for a constitutional deprivation if there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214-15 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

After reviewing the record, the Court finds that summary judgment is appropriate on both of Marcavage's *Monell* claims.  Regrading the policy or custom claim, Marcavage offers no proof at all of a Philadelphia Police Department custom or policy that would support his claim.  Instead he relies on his seven interactions with the police.  This evidence is insufficient to hold the City liable.  Even if a jury were to find that the individual officers violated Marcavage's rights, the testimony on which Plaintiff relies merely establishes that the Philadelphia Police Department has, on several occasions, confronted Marcavage, but not that it has an established policy or custom of any unconstitutional abuse.  Plaintiff must show more than a few incidents to establish a municipal custom that is sufficiently "permanent and well-settled" to virtually constitute law. *King v. City of*

15

*Philadelphia*, No. 99-cv-6303, 2002 U.S. Dist. LEXIS 10276, at *48 (E.D. Pa. June 4, 2002) (quoting *Robert S. v. City of Philadelphia*, No. 97-cv-6710, 2000 U.S. Dist. LEXIS 4020, at *6 (E.D. Pa. Mar. 30, 2000)).

Marcavage's failure to train claim brought against the City must fail as well. A failure to train claim can only succeed if it is shown that "the inadequacy… [or] failure to train amounts to deliberate indifference to the rights of the persons with whom the [officials] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The theory of Marcavage's case is that the failure to properly train and supervise certain officers in the City of Philadelphia Police Department prevented him from freely exercising his religious beliefs and his free speech rights. (Pl.'s Opp. Mem. at 20-21.) However, Marcavage cannot sustain this claim because he has not come forth with evidence to show that the there existed a failure to train that "actually caused" Defendants to deliberately disregard his constitutional rights. *Id.* at 391 (holding a plaintiff "must… prove that the deficiency in training actually caused the… [deliberate] indifference to [constitutional rights]"). Accordingly, the City of Philadelphia is granted summary judgment on both *Monell* claims.

**E. Qualified Immunity**

In addition to moving for summary judgment on the merits of Marcavage's claims, the Individual Defendants contend that summary judgment is proper based on the doctrine of qualified immunity. An official is entitled to qualified immunity in his individual capacity under § 1983 if a reasonable official would have believed that his actions were proper under existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity should be denied only if, in light of pre-existing law, the unlawfulness of an action should have been apparent. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the qualified immunity defense provides "ample protection to all but the

16

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This Court must determine whether Defendants' conduct was "objectively reasonable" given the clearly established state of the law. *Curley v. Klem*, 298 F.3d 271, 278-79 (3d Cir. 2002).

In determining whether an official is entitled to qualified immunity, "we [must] begin by considering the threshold question of whether the alleged facts, viewed in the light most favorable to [the plaintiff], show that [the official's] conduct violated a constitutional right." *Curley*, 298 F.3d at 279. The "reasonableness inquiry is an objective one." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In conducting this analysis, the Court "must judge 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Qualified immunity is not appropriate where it is found that the officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Wood v. Strickland*, 420 U.S. 308, 322 (1975), *quoted in Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002). However, "[i]f an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." *Forbes*, 313 F.3d at 148.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court enumerated the two-part inquiry a court must make in order to determine whether a state official is entitled to qualified immunity. First, do the facts alleged show that the officer's conduct violated a constitutional right? Second, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was a clearly established right. *Id.* at 201. The record will not support a

17

qualified immunity finding at the summary judgment stage because the rights at issue in this case are both constitutional and clearly established.  As discussed in detail above, Marcavage has presented enough evidence to make out a *prima facie* case on his claim against the Individual Defendants for First, Fourth, and Fourteenth Amendment violations.  Furthermore, it is obvious to the Court that the federally-protected rights to free speech, freedom from unreasonable seizure, and equal protection are all clearly established**.**  In short, this Court feels that the question of qualified immunity in this case is best left to the jury.  Defendants' motion is denied.

## F. Plaintiff's State Law Claims

Defendants argue that Pennsylvania's Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 PA. CONS. STAT. ANN. §§ 8541-8542, entitles the City of Philadelphia and the Individual Defendants to immunity.  (Defs.' Summ. J. Mem. at 23-24.)  While the Court agrees that the Tort Claims Act entitles the City to immunity from tort liability,[2] the Court disagrees that the state claims against the Individual Defendants should be dismissed.  The Tort Claims Act expressly waives the defense of official immunity for acts of willful misconduct.[3]  Therefore, the Court will

---

[2]Section 8542 provides that (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property in the possession of the local agency; (4) a dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency; (5) a dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way; (6) a dangerous condition of streets owned by the local agency or under the jurisdiction of Commonwealth agencies; (7) a dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency; or (8) care, custody or control of animals by a local agency or any of its employees may result in the imposition of liability on a local agency.

42 PA. CONS. STAT. § 8542.

[3]The Tort Claims Act provides:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation

18

dismiss the state claims against the City and deny summary judgment on the state claims brought against the Individual Defendants.

## G. Plaintiff's Claims for Punitive Damages

Finally, Defendants move for summary judgment on the issue of punitive damages against the City of Philadelphia and the Individual Defendants. (Defs.' Summ. J. Mem. at 25.)  The fact that the Court has already dismissed the *Monell* claim against the City of Philadelphia makes the issue of § 1983 punitive damages against the City moot.  Regarding Marcavage's remaining claims, the Court disagrees with Defendants' basis for dismissing the punitive damage claims against the Individual Defendants.  In a § 1983 claim brought against a state actor, a jury may assess punitive damages when the state actor's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to constitutionally protected rights.  *Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Defendants' motion is granted as to the City of Philadelphia and denied as to the Individual Defendants.

## IV. CONCLUSION

Based upon the foregoing reasons, the Court will deny Plaintiff Marcavage's Motion for Summary Judgment on his First Amendment and malicious prosecution claims.  The Court will also grant summary judgment on all of Marcavage's claims against the City of Philadelphia, and deny summary judgment on the claims against the Individual Defendants.  An appropriate order follows.

---

on damages) shall not apply.

42 PA. CONS. STAT. § 8550.  *See also Delate v. Kolle*, 667 A.2d 1218 (Pa.1995) (citing *Kuzel v. Krause*, 658 A.2d 856 (Pa. 1995) and concluding that "[f]or the purposes of the Code, 'willful misconduct' has the same meaning as the term 'intentional tort.').

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL ANTHONY MARCAVAGE,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 04-4741** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## ORDER

**AND NOW**, on this 3rd day of August, 2006, upon consideration of Plaintiff's Amended Motion for Partial Summary Judgment (Docs. 59 & 60), Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion (Docs. 64 & 65), and Plaintiff's Response in Opposition to Defendants' Cross-Motion (Doc. 67), **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment is **DENIED**;

2. Defendants Tiano, Fisher, Edwards and Kelly's Motion for Summary Judgment is **DENIED**;

3. Defendant City of Philadelphia's Motion for Summary Judgment is **GRANTED**.

**BY THE COURT:**

**/S/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**

20